HOOD, Judge.
This is a suit on a promissory note. Defendants resist on the ground that they have been released from liability by a discharge in bankruptcy. Plaintiff contends that the discharge is ineffective as to this indebtedness because defendants allegedly had disposed of property which had been mortgaged to secure payment of the note. The trial judge rendered judgment in favor of defendants. Plaintiff has appealed. We affirm.
The issue presented is whether defendants disposed of items of movable property in such a manner as to constitute “willful and malicious” injury to or conversion of property, under 11 U.S.C.A. Sec. 35(a), rendering defendants’ discharge in bankruptcy ineffective as to the indebtedness which forms the basis for this suit.
Plaintiff, Credit Plan, Inc., is the holder of a promissory note for the principal sum of $3,544.46, made payable to its order, dated April 16, 1969, and executed by defendants, Mr. and Mrs. Hobert Domingue. To secure the payment of that note, defendants pledged a $4,000.00 collateral note which they had executed on December 13, 1967, made payable to the order of “ourselves” and endorsed in blank by them. This collateral note was secured by a chattel mortgage covering and affecting about 50 items of movable property, consisting principally of household furniture and appliances.
In this suit, filed on January 23, 1970, plaintiff demands judgment for $3,067.02, plus interest and attorney’s fees, that being the remaining balance due on thé above described note owed to plaintiff. Defendants instituted bankruptcy proceedings shortly before this suit was filed, and they obtained a formal discharge in bankruptcy on February 10, 1970. A trustee was appointed in connection with the bankruptcy proceedings, but the trustee reported on January 8, 1970, that he was able to find only about 13 or 14 items of movable property belonging to defendants, some of which were described in the above mentioned chattel mortgage and others were not. On January 19, 1970, the Referee in Bankruptcy authorized the trustee to disclaim all of the movable items which were found. These articles were stored, but they were of very little value and eventually they were sold to pay the storage charges. The creditors received no part of the proceeds of the sale of these movables.
At the trial of the instant suit defendants testified that they did not sell, trade in or give away any of the movable items described in the chattel mortgage, that all of the articles described in that mortgage were worn out and had become useless through wear and tear or by fire, and that defendants had hauled away and disposed of the missing items as trash or junk. With reference to some of the items described in the chattel mortgage, defendants explained that a washing machine, a dryer, an air-conditioning unit, and a lawnmower, all of which are missing now, were “burned up” or “wore out” before they were junked. The testimony of defendants is supported by that of a neighbor and by that of defendant Domingue’s brother, both of whom stated that they assisted defendants in hauling some of these items to the dump grounds. These witnesses also confirmed defendants’ statements that the *654 mortgaged items were old and of little value, and one of the witnesses observed that defendants have “six rowdy kids and they had the furniture pretty well tore up.”
The only evidence produced by plaintiff which tends to show that the missing items of movable property had some value was a statement signed by Mrs. D^omingue dated December 11, 1967, indicating that at that time defendants owned the mortgaged chattels. Near the bottom of that statement there appears the notation, “$1000— AES.” An employee of plaintiff testified that that notation was made by Arthur Sigler, who was employed by plaintiff as an “outside man” in 1967, and who obviously valued all of the movables listed on that statement at $1,000.00 at about the time the chattel mortgage was executed. None of the witnesses who testified for plaintiff had ever seen any of the missing movables, and none of them could estimate the value of those movables 'either at the time the chattel mortgage was executed or at the time the bankruptcy proceedings were filed.
We agree with plaintiff that it seems unlikely that so many items of movable property described in the chattel mortgage became worn out or useless through wear and tear between the time the mortgage was executed in December, 1967, and the time the bankruptcy proceedings were instituted. There, however, is positive evidence showing that the chattels became worthless and were junked during that time, and we find nothing in the record to contradict that proof. The trial judge obviously concluded that the missing chattels had become useless and of no value and that they were thrown away. Under the. evidence produced here, therefore, we cannot say that the trial judge erred in reaching that conclusion.
The issues to be determined in the instant suit are almost identical with those presented in X-L Finance Company v. Olivier, 198 So.2d 168 (La.App. 1 Cir. 1967). There, the defendants testified that they disposed of certain pieces of mortgaged furniture and appliances after they became useless and worthless through normal use, and the plaintiff did not present evidence to contradict their testimony. The First Circuit Court of Appeal concluded that defendants “did not willfully and maliciously dispose of the mortgaged property,” and that their discharge in bankruptcy thus released them from any further obligation to pay that debt.
The same conclusions were reached under similar circumstances in Prudential Finance Plan of N.O., La., Inc. v. Necaise, 192 So.2d 868 (La.App. 4 Cir. 1966); and Davis v. Aetna Acceptance Company, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).
Plaintiff refers us to Excel Finance Camp, Inc. v. Tannerhill, 140 So.2d 202 (La.App. 4 Cir. 1962); and X-L Finance Company v. Adams, 187 So.2d 759 (La.App. 1 Cir. 1966). We distinguish those cases from the instant suit. In Tannerhill, unlike the facts in the instant suit, the mortgagor sold mortgaged property without authority, and he appropriated the proceeds of the sale to his own use. We agree with our brothers of the Fourth Circuit that under those circumstances the act of the mortgagor constituted a “willful and malicious injury to property,” rendering his discharge in bankruptcy ineffective as to that indebtedness. It is true, as pointed out by plaintiff, that in the Adams case, the First Circuit Court of Appeal observed that “the debtor must produce the mortgaged chattels or be condemned to pay the debt.” In the later case of X-L Finance Company v. Olivier, supra, however, the same court referred to that statement in Adams and explained that “this must be limited to the situation where the mortgagor has wrongfully disposed of the mortgaged property, as was done in the X-L Finance case.”
We have found in the instant suit that the items of movable property which defendants disposed of had become worthless from normal use or by fire. Since they *655 were of no value, the junking of them by defendants did not constitute a willful and malicious injury to that property, or a wrongful conversion of it, as those terms are used in 11 U.S.C.A. Sec. 35(a).
Our conclusion is that the evidence in the instant suit fails to show that defendants willfully and maliciously disposed of, converted or injured mortgaged property to the detriment of plaintiff, and that the trial judge correctly rejected plaintiff’s demands.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.